69950, 69951. AETNA CASUALTY & SURETY COMPANY
v. VALDOSTA FEDERAL SAVINGS & LOAN
ASSOCIATION et al.; and vice versa.
(333 SE2d 849)

McMURRAY, Presiding Judge.

On April 1, 1981, William E. Dahl executed a $55,000 note made payable to Valdosta Federal Savings and Loan Association (Valdosta Federal). The note was to bear interest on the unpaid principal balance at the rate of 13.75 percent per annum. To secure the repayment of the indebtedness evidenced by the note, Dahl executed a deed to secure debt in favor of Valdosta Federal thereby conveying, with power of sale, certain property located at 301 Oak Center Place, Valdosta, Georgia. The deed to secure debt was recorded in Lowndes Superior Court on April 3, 1981. It provided, inter alia, the following: "17. Transfer of the Property: Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower [Dahl] without Lender's [Valdosta Federal's] prior written consent . . . Lender may, at Lender's option, declare all the sums secured by this Deed to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Deed shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall re-

lease Borrower from all obligations under this Deed and the Note."

In addition, the deed to secure debt contained a provision which reads: "24. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Deed and the Note, and the release of Borrower pursuant to paragraph 17 hereof, shall not constitute a novation."

After Dahl executed the April 1, 1981, deed to secure debt, Aetna Casualty & Surety Company (Aetna) obtained a judgment against Jerome J. Klein in the principal amount of $27,474.88. A fieri facias was issued pursuant to the judgment and entered on the Lowndes County general execution docket on August 3, 1981. (The judgment was partially satisfied upon the receipt by Aetna of $8,200.)

On February 1, 1982, Dahl conveyed the property described in the April 1, 1981, deed to secure debt to Jerome John Klein (who is one and the same as Jerome J. Klein) and Linda Renate Klein. The conveyance was made by warranty deed and it was expressly made subject to the April 1, 1981, deed to secure debt. As a part of the same transaction, the Kleins simultaneously executed a $15,000 note and a purchase money loan deed in favor of Dahl. The loan deed, dated February 1, 1982, was also expressly made subject and subordinate to the April 1, 1981, deed to secure debt. It was duly recorded on February 5, 1982. It is undisputed that the Kleins intended to use the purchased property as their primary residence.

The conveyance by Dahl to the Kleins was made in conjunction with an assumption agreement made between Dahl, the Kleins, and Valdosta Federal. Via the agreement dated February 1, 1982, Valdosta Federal consented to the sale of the property by Dahl to the Kleins; the Kleins assumed Dahl's indebtedness to Valdosta Federal; Valdosta Federal released Dahl from the obligations contained in the April 1, 1981, note and deed to secure debt; and, effective February 1, 1982, the terms of the April 1, 1981, note were modified by increasing the rate of interest payable thereunder from 13.75% per annum to 15% per annum. At the time of this transaction, Valdosta Federal did not have actual knowledge of Aetna's recorded judgment against Jerome John Klein. (In his application to Valdosta Federal, Klein denied the existence of any outstanding judgments against him.)

Subsequently, the Kleins went into default under the terms of the notes, the deed to secure debt and the loan deed. On March 30, 1984, Dahl transferred the February 1, 1982, note and loan deed which had been executed by the Kleins to Valdosta Federal. In consideration for the transfer, Valdosta Federal paid Dahl the sum of $7,981.01.

Shortly thereafter, Valdosta Federal commenced foreclosure proceedings against the subject property. Thereupon, Aetna brought this declaratory judgment action against Valdosta Federal, Dahl and Je-

rome J. Klein seeking a determination of the priority of its claim against the property and a stay of the foreclosure proceedings. Following an initial hearing, the property was allowed to proceed to foreclosure with the stipulation that a minimum of $72,500 would be accepted for the property and that the proceeds derived from the sale would be held in escrow until the priorities of the claims of Aetna and Valdosta Federal were determined.

Upon the trial of the case, the court, sitting without a jury, determined that the claims of the parties "should rank according to date, the oldest having priority." See OCGA § 44-14-323. Thus, the court concluded that Valdosta Federal should recover, from the proceeds of the foreclosure sale, the principal indebtedness owing pursuant to the April 1, 1981, note and security deed, together with interest and attorney fees; that Aetna should then recover from the proceeds the remaining balance owing upon its judgment against Jerome J. Klein; that, from any further remaining balance, Valdosta Federal should recover the indebtedness owing upon the February 1, 1982, note and loan deed executed by the Kleins which Dahl transferred to Valdosta Federal; and that, after payment in full of the claims of Aetna and Valdosta Federal, Jerome J. Klein was entitled to receive any funds remaining from the proceeds of the sale. Being dissatisfied with the trial court's judgment, Aetna (Case No. 69950) appeals and Valdosta Federal (Case No. 69951) cross-appeals. *Held:*

*Case No. 69950*

1. Relying upon OCGA § 44-14-5 (b) (2) (B) and 44-14-5 (b) (4), Aetna contends that since Valdosta Federal increased the interest rate of the April 1, 1981, note in excess of 1 percent per annum at the time of the transfer of the property from Dahl to the Kleins, Valdosta Federal was prohibited from enforcing the foreclosure provisions of the April 1, 1981, deed to secure debt and it lost its priority position. We disagree.

Georgia laws restricting the enforcement of "due-on sale" provisions have been pre-empted by the Garn-St. Germain Depository Institutions Act of 1982 (P. L. 97-320, 96 Stat. 1469) which expressly permits a lender to "enforce a contract containing a due-on-sale clause with respect to a real property loan." 12 USCA § 1701j-3 (b) (1). Although the transaction in the case sub judice may fall within the "window period" during which State due-on-sale prohibitions are applicable (see 12 USCA § 1701j-3 (c)), the "window period" loan exception does not apply where, as here, the "loan . . . was originated by a Federal savings and loan association or Federal savings bank." 12 USCA § 1701j-3 (c) (2) (C). See also Parks, Due-on-Sale: The Fed. Solution, 20 Ga. State Bar Journal 54, 56 (1983).

2. Aetna contends that the assumption of the loan by the Kleins constituted a novation of the original note and that, therefore, the April 1, 1981, deed to secure debt cannot be considered to have priority over Aetna's judgment. We disagree. The assumption was a modification of the original note which merely changed the terms of the indebtedness. Accordingly, the debt evidenced by the security deed did not lose its priority status. "A security deed, like any other deed, may be corrected or modified by a new deed or by a subsequent instrument in the form of a modification agreement, changing the terms of the indebtedness, the description of the property conveyed, the designation of the parties or the execution or attestation. The cancellation of the old security deed and the execution of a new one between the same parties may have the effect of a novation, so as to promote junior liens to superior rank, but a modification agreement will not have such an effect where the original security deed is not cancelled. . . ." Pindar, Ga. Real Est. Law, § 21-44.

3. Aetna's contention that the trial court erred by concluding that Valdosta Federal was entitled to recover reasonable attorney fees is without merit. The deed to secure debt executed by Dahl provided for the collection of reasonable attorney fees if upon default Valdosta Federal invoked the power of sale or "any other remedies permitted by applicable law."

## Case No. 69951

4. In its cross-appeal, Valdosta Federal asserts the trial court erred in determining that Aetna's judgment lien had priority over the lien created by the February 1, 1982, loan deed which Dahl transferred to Valdosta Federal for value. In this regard, Valdosta Federal points out that since the loan deed was a purchase money mortgage, it should take precedence over Aetna's intervening judgment lien. We accept Valdosta Federal's assertion.

"A purchase money security deed or mortgage has priority over liens against the purchaser of the property who simultaneously executes a security deed or mortgage for the purchase money. As was stated in *Federal Land Bank v. Bank of Lenox*, 192 Ga. 543, 556 (16 SE2d 9) (1941): '(A) mortgage or deed to land, securing its purchase-money, and executed as a part of the same transaction in which the purchaser acquires title, will exclude or take precedence over any prior lien against the property arising through or against the purchaser. When the contracts are simultaneously made, so as to constitute one transaction, "it makes no difference that the purchase-money mortgage may be made to a third person who advances the purchase-money at the time the purchaser receives his conveyance." ' See also *Protestant Episcopal Church v. Lowe Co.*, 131 Ga. 666 (63 SE 136)

(1908); *Mitchell v. West End Park Co.*, 171 Ga. 878 (156 SE 888) (1930); *Hand Trading Co. v. Daniels*, 126 Ga. App. 342 (190 SE2d 560) (1972)." *Murray v. Chulak*, 250 Ga. 765, 769-770 (3) (300 SE2d 493).

The rule "applies as well where a part of the purchase-money is paid, and the mortgage is to secure the balance, as where none of the purchase-money is paid and the mortgage is for the whole. *Courson v. Walker*, 94 Ga. 175 (21 S.E. 287)." *Protestant Episcopal Church v. Lowe Co.*, 131 Ga. 666, 669, supra. The law is clear: "A security deed made to secure purchase money in connection with the sale of land has a special priority over intervening liens against the grantor." Pindar, Ga. Real Est. Law, § 21-34.

It follows that the trial court erred in determining that Aetna's judgment lien had priority over the lien created by the February 1, 1982, purchase money loan deed. The special priority position afforded the purchase-money loan deed is not diminished by the mere fact that Aetna's judgment lien was recorded on the general execution docket. See *Protestant Episcopal Church v. Lowe Co.*, 131 Ga. 666, supra.

*Judgment affirmed in Case No. 69950. Judgment reversed in Case No. 69951. Banke, C. J., and Benham, J., concur.*

DECIDED JUNE 18, 1985 —
REHEARINGS DENIED JULY 12, 1985 AND AUGUST 1, 1985 —

*O. Wayne Ellerbee*, for appellant.
*Willis L. Miller*, for appellees.