### A03A0535. GLISSON COKER, INC. v. COKER et al.
(581 SE2d 303)

JOHNSON, Presiding Judge.

John Glisson and Robert Coker began working together in 1996. In July 1999, they incorporated Glisson Coker, Inc. (hereinafter "GCI"). GCI was engaged in the business of representing manufacturers as their sales representatives in the southeastern part of the United States. GCI was a statutory close corporation. Glisson was

GCI's president, and Coker was GCI's vice-president. Glisson and Coker were the only shareholders of GCI, and they each held 50 percent of the shares of GCI. During 2000, Glisson and Coker began having disagreements about the finances and management of GCI, and at least two of GCI's larger accounts terminated their representative agreements with GCI. Both parties agreed that GCI would be dissolved, and it is undisputed that by January 2001, GCI effectively stopped functioning as a sales entity.

Shortly thereafter, Coker began representing the two manufacturers who had previously terminated their representative agreement with GCI, as well as three other manufacturers who had been represented by GCI. On March 12, 2001, Glisson filed suit in GCI's name against Coker and R. B. Coker & Associates, Inc. (hereafter referred to jointly as "Coker"). The complaint sought a temporary and permanent restraining order to enjoin Coker from competing against GCI, and sought damages on claims including, but not limited to, conversion, interference with contract rights, misappropriation of corporate assets, and misappropriation of corporate opportunities. The trial court denied Glisson's petition for a temporary restraining order.

Subsequently, the trial court appointed a receiver for GCI by consent of the parties. The receiver issued a report adopted by the trial court in its final order. In its final order, the trial court dismissed the complaint, finding that Glisson was not authorized to bring this action for the corporation, or to retain counsel and expend corporate funds in bringing this action. The trial court ordered Glisson to repay the corporation the amount expended to pursue the litigation. GCI appeals. We granted Glisson's motion to intervene to represent his individual interests.

1. GCI and Glisson contend that the trial court erred in dismissing the complaint on the ground that Glisson did not have legal authority to bring the action on behalf of the corporation. According to GCI and Glisson, Glisson was properly acting as president of GCI when he filed the suit in GCI's name against Coker. This case presents a question of first impression in Georgia. The parties have not cited, and we have not found, any Georgia case discussing the authority of a 50 percent shareholder, acting as president, to file suit on behalf of a statutory close corporation against another 50 percent shareholder. However, our review of the record in this case, of Georgia law, and of persuasive authority from other jurisdictions leads us to conclude that the trial court properly dismissed GCI's lawsuit.

While GCI argues that it was not a statutory close corporation without a board of directors, the record shows otherwise. GCI's articles of incorporation cite that GCI is a statutory close corporation, and the document Glisson filled out for the incorporator indicated

that the corporation was to be established as a statutory close corporation without a board of directors. In addition, it is undisputed that directors were never elected. Even the receiver in this case found that GCI was a statutory close corporation without a board of directors.

OCGA § 14-2-922 (c) (1) specifically states that in a statutory close corporation without a board of directors, "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, the shareholders." Thus, the decision of whether to file a lawsuit on behalf of the corporation rested with its shareholders, not its president. Glisson had many options other than filing the improper lawsuit. He could have filed a derivative suit in his own name on behalf of the corporation or perhaps a direct action in his own name against Coker.[1] He also could have requested the appointment of a receiver to investigate and, if appropriate, sue in the name of GCI. Glisson chose not to pursue any of these appropriate options.

Citing OCGA § 14-2-841, GCI argues that Glisson, acting as GCI's president, could hire counsel and file suit against Coker because filing suit for a corporation is part of its "ordinary" business. Given the circumstances of this case, we must disagree. While filing lawsuits may be part of the ordinary business in some corporations, there is no indication in the record that such actions were part of GCI's ordinary business. The filing of a lawsuit on behalf of one 50 percent owner against another 50 percent owner is not part of GCI's ordinary business.

GCI contends that Glisson was authorized to file suit on behalf of GCI to protect GCI's vital corporate interest. However, the record clearly shows that GCI had ceased functioning as a corporate entity by January 2001, more than two months before Glisson filed suit on behalf of GCI. Thus, we fail to see how Glisson was protecting a vital corporate interest.

GCI also contends that its internal documents authorized Glisson to file the suit against Coker. However, it is clear from the record that Glisson and Coker never executed any bylaws and never executed any of the corporate documents, including the minutes. Moreover, even if Glisson, as president of GCI, did have the authority to retain legal counsel to represent the interests of GCI, this authority did not extend to filing suit against the other 50 percent shareholder, especially when the parties agreed the corporation ceased functioning at least two months prior to the filing of the suit.

---

[1] See *Parks v. Multimedia Technologies*, 239 Ga. App. 282, 287 (2) (520 SE2d 517) (1999).

In this case of first impression, we have examined not only the record before us, but also Georgia law and law from foreign jurisdictions. We find the foreign cases cited by GCI to be misplaced or not applicable. However, at least one foreign jurisdiction has addressed the exact issue before us. In *Stone v. Frederick*,[2] a New York appellate court held that where there are only two stockholders, each with a 50 percent share, an action cannot be maintained in the name of the corporation by one stockholder against another with an equal interest and degree of control over the corporate affairs. We find this holding to be persuasive, and hereby adopt this rule with respect to statutory close corporations with two equal shareholders; the proper remedy lies elsewhere.[3] The trial court did not err in dismissing the present case.

2. GCI argues that the trial court erred in adopting the receiver's report. Specifically, GCI questions two findings by the receiver. We have reviewed the record and find no error in the trial court's adoption of the receiver's report. The receiver was authorized by the trial court to file a report "detailing his actions taken as well as the resolution of issues taken under his jurisdiction, authority or control." This was done by the receiver, and the receiver's report was adopted by the trial court. GCI has failed to meet its burden of showing any error in the trial court's adoption of this report.

3. Glisson, as an intervenor, argues that the trial court erred in ordering him to reimburse GCI for the amount he expended in bringing the present action since the trial court found Glisson had no authority to bring the action. For the reasons set out below, we vacate the judgment.

It is well settled that a valid judgment against a person requires that a court acquire personal jurisdiction over the person.[4] And personal jurisdiction requires either service of process or the person's voluntary appearance.[5] Here, neither was obtained. Glisson filed suit on behalf of GCI as GCI's president. He was never personally a party to the action, never personally served with process, and never voluntarily submitted to the jurisdiction of the trial court in his individual capacity. As a legal entity, a corporation is separate and distinct from its officers, stockholders, and agents.[6]

No court can order the payment of expenses of litigation or any other payment by an individual over whom the court does not have

---

[2] 245 AD2d 742, 744-745 (N.Y. App. 1997).

[3] See also *Sealand Investment Corp. v. Emprise, Inc.*, 190 Cal. App.2d 305 (12 Cal. Rptr. 153) (1961).

[4] See *Bonner v. Bonner*, 272 Ga. 545, 546 (2) (533 SE2d 72) (2000).

[5] Id.

[6] See *Speir v. Krieger*, 235 Ga. App. 392, 398 (3) (509 SE2d 684) (1998).

personal jurisdiction.[7] Because the trial court lacked the jurisdiction or power to enter a judgment against Glisson, the judgment ordering Glisson to repay GCI is void.[8]

Based on the foregoing, we affirm the dismissal of GCI's lawsuit, but vacate as void ab initio the trial court's order that Glisson must repay GCI the amount of corporate funds expended by Glisson to pursue this litigation without proper authority. We note that nothing in this opinion should be read to prohibit the parties from pursuing these issues in a proper lawsuit involving proper parties.

*Judgment affirmed in part and reversed in part. Eldridge and Mikell, JJ., concur.*

DECIDED MARCH 13, 2003.

*Slater & King, Andrew N. Gross, Eric T. Johnson*, for appellant.
*Henderson & Lipscomb, Quentin Henderson, Mitchell S. Rosen*, for appellees.

---

[7] See generally *Midkiff v. Midkiff*, 275 Ga. 136, 138 (2) (562 SE2d 177) (2002); *McCalla, Raymer &c. v. C.I.T. Financial Svcs.*, 235 Ga. App. 95, 96 (508 SE2d 471) (1998); *Dept. of Human Resources v. Morton*, 204 Ga. App. 638, 639 (420 SE2d 89) (1992).

